STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
ARCHIE ALSTON, DEFENDANT-RESPONDENT.

Argued May 24, 1976—Decided June 28, 1976.

See also, 70 *N. J.* 95.

(1)

*Mr. Michael A. Noto,* Assistant Prosecutor, argued the cause for plaintiff-appellant (*Mr. Noto,* of counsel and on the brief; *Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney).

*Mr. Robert E. Rochford,* Deputy Attorney General, argued the cause for *amicus curiae* Division of Criminal Justice (*Mr. Rochford,* of counsel and on the brief; *Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

*Mr. Gerald P. Boswell,* Assistant Deputy Public Defender, argued the cause for defendant-respondent (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

The opinion of the Court was delivered by

SULLIVAN, J. Defendant, Archie Alston, Jr., was charged with possession of heroin and possession of heroin with intent to distribute, violations of *N. J. S. A.* 24:21–20 a. and *N. J. S. A.* 24:21–19 a. respectively. At trial, the jury found defendant guilty of the possession charge but acquitted him of the charge of possession with intent to distribute.

Prior to sentencing, defendant moved for the suspension of further proceedings and for admission to a treatment program under *N. J. S. A.* 24:21–27.

The prosecutor objected to defendant's motion on the ground that the statutory program applied only to persons involved in drug use. Since defendant did not admit to drug use or addiction, and no evidence appeared in the record from which such a determination could be made, the prosecutor contended that defendant did not come within the provisions of the statute.

The trial court held that the benefits of the statute were not limited to drug users, but would apply, as here, to one convicted only of possession. It found defendant eligible for section 27 proceedings, suspended further proceedings and placed defendant under supervisory treatment. One of the terms and conditions imposed required defendant to participate in a urine monitoring program.

On leave granted, the State appealed to the Appellate Division which affirmed the ruling of the trial court in an opinion reported at 136 *N. J. Super.* 456 (1975). We granted the State's motion for leave to appeal. 69 *N. J.* 448 (1976). We affirm.

The present statutory scheme for dealing with the problem of drug abuse in this State is the New Jersey Controlled Dangerous Substances Act, *N. J. S. A.* 24:21–1 *et seq.*[1] The legislation carefully distinguishes among the various kinds

---

[1]Controlled dangerous substance is defined as a drug, substance or immediate precurser listed in Schedules I through V of Article 2 of the Act.

of drug offenses. As to first offenders charged with or convicted of any offense under subsections 20a. (1), (2) and (3), and b.,[2] the act provides in section 27, in lieu of a judgment of conviction, an alternate method of disposition. It is the interpretation of this section, quoted below, which is at issue:

N. J. S. A. 24 :21–27  Supervisory treatment for certain first offenses

a. Whenever any person who has not previously been convicted of any offense under the provisions of this act or, subsequent to the effective date of this act, under any law of the United States, this State or of any other state, relating to narcotic drugs, marihuana, or stimulant, depressant, or hallucinogenic drugs, is charged with or convicted of any offense under subsections 20 a. (1), (2) and (3), and b., the court, upon notice to the prosecutor and subject to subsection c., may on motion of the defendant or the court:

(1) Suspend further proceedings and with the consent of such person after reference to the Controlled Dangerous Substance Registry, as established and defined in the Controlled Dangerous Substances Registry Act of 1970, place him under supervisory treatment upon such reasonable terms and conditions as it may require; or

(2) After plea of guilt or finding of guilt, and without entering a judgment of conviction, and with the consent of such person after proper reference to the Controlled Dangerous Substances Registry as established and defined in the Controlled Dangerous Substances Registry Act of 1970, place him on supervisory treatment upon such reasonable terms and conditions as it may require, or as otherwise provided by law.

b. In no event shall the court require as a term or condition of supervisory treatment under this section, referral to any residential treatment facility for a period exceeding the maximum period of confinement prescribed by law for the offense for which the individual has been charged or convicted, nor shall any term of supervisory treatment imposed under this subsection exceed a period of 3 years. Upon violation of a term or condition of supervisory treatment the court may enter a judgment of conviction and proceed as otherwise provided, or where there has been no plea of guilt or finding of guilt, resume proceedings. Upon fulfillment of the terms and conditions of supervisory treatment the court shall terminate the supervisory treatment and dismiss the proceedings against him. Termination of supervisory treatment and dismissal under this section shall be without

---

[2] The offenses set forth in subsection 20 a. (1), (2) and (3) deal generally with possession of controlled dangerous substances. Subsection 20 b. deals with use or being under the influence of a controlled dangerous substance.

court adjudication of guilt and shall not be deemed a conviction for purposes of disqualifications or disabilities, if any, imposed by law upon conviction of a crime or disorderly persons offense but shall be reported by the clerk of the court pursuant to the Controlled Dangerous Substances Registry Act. Termination of supervisory treatment and dismissal under this section may occur only once with respect to any person. Imposition of supervisory treatment under this section shall not be deemed a conviction for the purposes of determining whether a second or subsequent offense has occurred under section 29 of this act or any law of this State.

c. Proceedings under this section shall not be available to any defendant unless the court in its discretion concludes that:

(1) The defendant's continued presence in the community, or in a civil treatment center or program, will not pose a danger to the community; or

(2) That the terms and conditions of supervisory treatment will be adequate to protect the public and will benefit the defendant by serving to correct any dependence on or use of controlled substances which he may manifest.

While section 27 on its face would appear to apply to one charged with or convicted of possession only, the State contends that the frequent references in section 27 to "supervisory treatment" indicate plainly that the program was established to aid and rehabilitate drug users and would not apply to a person not shown to be a user. In particular, the State relies on the language of 27 c. (2), *supra,* which provides that proceedings under the section shall not be available to any defendant unless the court in its discretion concludes that the terms and conditions of supervisory treatment

"* * * will benefit the defendant by serving to correct any dependence on or use of controlled substances which he may manifest."

Rhetorically, the State asks what kind of supervisory treatment can be ordered for one who is not a user?

■ It is clear that the main thrust of section 27 is directed at the rehabilitation of users of controlled dangerous substances, but we do not read the statutory provision as limiting its applicability solely to this class of individuals. Prospective users, early stage users or experimenters, though not necessarily requiring the type of supervisory treatment

called for where regular use or addiction is involved, nonetheless need counselling and advice, and perhaps, as was done in this case, some kind of effective monitoring to see to it that they do not become involved in drug use. We think the Legislature intended to include this kind of therapy in the broad term "supervisory treatment."

Another purpose of the statute is to avoid placing the stigma of a criminal conviction on a first offender if that person can be freed from whatever drug involvement he or she may have. If an acknowledged user can avoid this stigma under the aegis of section 27, certainly the Legislature must be deemed to have intended that a prospective user or early stage user or experimenter would be no less entitled to the benefits of the statute.

It is to be noted that the provisions of section 27 are applicable to one charged with or convicted solely of simple possession under subsection 20 a., *supra*. It is not required that the offense include use or being under the influence (see subsection 20 b.), although they also are offenses which quality for the statutory treatment. In this respect, a motion to suspend further proceedings under section 27 differs radically from a motion under *R.* 3:21–10(b)(1) to change a custodial sentence so as to permit the entry of the defendant into a treatment or rehabilitation program for drug abuse. See *N. J. S. A.* 2A:168–1. The latter, *inter alia*, requires a showing by the defendant of present drug addiction. *State v. Davis*, 68 *N. J.* 69, 84–86 (1975); *State v. McKinney*, 140 *N. J. Super.* 160 (App. Div. 1976). The thrust of the section 27 program is quite different. It seeks to give first offenders a chance to make a fresh start and to do so without the stigma of a criminal record.

The Attorney General of New Jersey, who has appeared in this matter as *amicus curiae*, fully supports the construction we have placed on section 27 as comporting with the legislative intent.

The State makes the further contention that defendant is not eligible for section 27 proceedings because his

employment status would make him "a danger to the community." See section 27 c., *supra*. Defendant was a member of the East Orange Police Department at the time he was arrested for possession of heroin. The State contends that upon successful completion of the section 27 proceedings the charge against defendant will be dismissed and defendant will then be eligible to return to his employment. It is the State's position that since defendant was found to have been in possession of heroin, his drug involvement, whatever it was, would affect his performance as a law enforcement officer and thus, presumably, pose a danger to the community.

This contention lacks merit. We are not concerned here with a municipality's basic right to refuse to reinstate a police officer upon a proper showing that restoring him to his duties would pose a danger to the community. The "pose a danger to the community" language of section 27 c. (1) is directed at a different problem. It focuses on a defendant's conduct while a participant in the program. The trial court was aware of the nature of defendant's employment and took it into consideration before exercising its discretion to suspend further criminal proceedings. Defendant has now fulfilled the terms and conditions imposed on him, the criminal proceedings against him have been terminated by the trial court, and defendant has been restored to his employment as a police officer. No basis, therefore, exists for the argument that defendant's employment status makes him a threat to the community within the meaning of the statute.

Affirmed.

*For affirmance*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For reversal*—None.